1

**ACTIUM LLP**
Mike Gatto, State Bar No. 232674
Jonathon D. Nicol, State Bar No. 238944
5419 Hollywood Blvd, Suite C-356
Los Angeles, CA 90027
Telephone: 323-819-0300
Email: mike@actiumllp.com
Email: jonathon.nicol@actiumllp.com

*Attorneys for Plaintiff*
*Ali Gorginfar*

2

3

4

5

6

7

8

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

9

10

11

12

13

14

15

16

| | |
|---|---|
| ALI GORGINFAR,<br><br>       Plaintiff,<br><br>       v.<br><br>FEDERAL BUREAU OF INVESTIGATION; DANIEL DEAN, SPECIAL AGENT, FBI; STEVEN SANCHEZ, SPECIAL AGENT, FBI; and DOES 1 through 10,<br><br>       Defendants. | Case No.: _____<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**JURY DEMANDED** |

17

18

19

20

21

22

23

24

25

26

27

28

1

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**PARTY ALLEGATIONS**

1.      Plaintiff Ali Gorginfar ("Ali") is an individual residing in the County of San Bernardino, State of California.

2.      Defendant Federal Bureau of Investigation ("FBI"), headquartered at 935 Pennsylvania Avenue, N.W., Washington, D.C. 20535, is a component of United States Department of Justice, an agency of the federal government, and subject to the Freedom of Information Act, 5 U.S.C. § 552.

3.      Defendant Daniel Dean is a Special Agent with FBI.  He is sued in his individual and official capacity.

4.      Defendant Steven Sanchez is a Special Agent with FBI.  He is sued in his individual and official capacity.

5.      Defendants "Does" 1 through 10 are active members of the United States Air Force at Davis Monthan Air Force Base, employees of the General Services Administration ("GSA"), or are otherwise agents of the federal government.  They are sued in their individual and official capacities.

**JURISDICTION AND VENUE**

6.      This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(A)(vii), 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. § 552(a)(6)(C)(i), and 5 U.S.C. § 702.

7.      This Court has jurisdiction to grant relief in this action pursuant to 28 U.S.C. § 1346(b), as Ali brings claims under the Federal Tort Claims Act.

8.      Jurisdiction of this Court is also invoked under 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this being an action arising under, and for the violations of, federal laws.

9.      This Court also has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

10.     Venue is properly located in the Central District of California under 5 U.S.C. § 552(a)(4)(B).

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

11.     This Court is also a proper venue for this action pursuant to 28 U.S.C. § 1391(e)(1) because defendants are officers and employees of the United States or its agencies operating under color of law, and a substantial part of the events or omissions giving rise to the claims have occurred and are occurring in this District.

12.     Venue is also properly with this District under 28 U.S.C. § 1402(b) as the defendants' acts that are the subject of this Complaint occurred in this District.

13.     This action is further brought under the United States Constitution pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for the defendants' ethnic and religious profiling in violation of Ali's Equal Protection and Due Process rights.

## **FACTUAL ALLEGATIONS**

14.     Ali is an American of Iranian heritage, born in Iran.  Though not particularly religious, Ali was raised in the Islamic faith and is a Muslim.

15.     When Ali was a boy, his family fled to the United States as refugees during the Iran-Iraq war in 1986.  The United States granted Ali and his family political asylum shortly thereafter.

16.     Ali has been a United States Citizen for over 20 years.

17.     The United States is the only country that Ali has known for most of his life, and he is a devoted American.

18.     Ali's father had been the CEO of Bridgestone Tires in Iran, but could not find work after coming to the United States.  So, he started a carpet company.  Ali eventually took over the family business, G & S Carpet Mills, which has been in business for thirty-one years.

19.     During its three decades in existence, G & S Carpet Mills and Ali earned the business of dozens of satisfied customers.  Those satisfied customers include:

- •     The Department of Defense
- •     The United States Navy Headquarters
- •     Tavis Air Force Base

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1      •     Vandenburg Space Force

2      •     Sierra Army Depot

3      •     The Army Corps of Engineers

4      •     Edwards Air Force Base

5      •     JBSA Lackland Air Force Base

6      •     Nellis Air Force Base

7      •     Peterson Air Force Base

8      •     Warren Air Force Base

9      •     Cheyenne Mountain Air Force Base / NORAD Headquarters

10      •     Schriever Air Force Base

11      •     Offutt Air Force Base

12      •     Holloman Air Force Base

13      •     Davis Monthan Air Force Base

14      •     The Department of Homeland Security

15      •     The Air National Guard

16      •     The Federal Air Marshal

17      •     The California Department of Corrections

18      •     California State University Fullerton

19      •     California State University San Bernardino

20      •     California State University East Bay

21      •     The California Science Center

22      •     The California Highway Patrol

23      •     The Pomona Police Department

24      •     The Santa Ana Police Department

25      •     The San Bernardino Police Department

26      •     The Murrieta Police Department

27      •     The West Covina Police Department

28      •     The Santa Clara Police Department

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

- • The Los Angeles County Fire Department
- • The Los Angeles County Register Recorder & County Clerk
- • The Superior Court of California, Orange County
- • The Superior Court of California, San Diego County
- • The United States District Court for the Southern District of California

20.   As is apparent from that list, G & S Carpet Mills and Ali won these contracts after rigorous, public bidding processes, requiring skill, experience, and trust.  Many of these contracts required installation at sensitive areas, and Ali has never breached that trust, as his long list of customers shows.

21.   In addition to an extensive and rigorous contracting and selection process, the performance of most of these contracts is subject to special rules and well-defined, established procedures.  Each location has in place rigorous security protocols, appropriate for each site.  The typical protocol when working at a secure site is as follows:

a.   Go through base pass and identification for background check before entering the base.  Based on the location of the building, there is often a second background and identification checkpoint.

b.   Once arrived at the building, someone meets the installers outside.

c.   Once in the building, the installers must sign in and provide an identification card number.

d.   Once signed in, all electronic devices must be locked in secure lockers.

e.   The point of contact then enters the secure area of the building and tells occupants that there are "non-secure individuals" about to enter, and so to put away anything confidential. The point of contact, and often additional security, then accompany the installers to the secure area.

f.   Once in the secure area, there are emergency flashing lights in the ceiling and the "non-secure individuals" have to go straight to the area that requires work.

5

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

g.    If in an office area, the office occupant has their computer turned off and is standing next to their desk.  Occupants turn off computers and stand at attention.

h.    After these procedures, G&S Carpet Mills commences contract performance.

i.    At no time is Ali or any G&S Carpet Mills employee or agent alone in any secure area.

22.    As is also apparent from the sheer length of that list, G&S Carpet Mills and Ali have a sterling reputation, have always performed the contracts well, and enjoy great client relationships.

23.    However, even good people occasionally get into spats or tiffs.

### *Davis Monthan Air Force Base Incident*

24.    In about November or December 2020, during a contract at Davis Monthan Air Force Base, G & S Carpet Mills hired a subcontractor to perform carpet removal.

25.    A person from the Davis Monthan Air Force Base named "Amanda," when on the phone with G & S Carpet Mills, referred to G & S Carpet Mills by saying "oh I swear to god if they…oh I am going to…" then she changed her tone and did not complete the sentence.

26.    "Amanda" then notified G & S Carpet Mills that there was an issue with the carpet removal subcontractor.

27.    Once G & S Carpet Mills was notified of these issues, Ali went to the base and did a walkthrough to address the issues.

28.    G & S Carpet Mills terminated the subcontractor and G & S Carpet Mills sent its own inhouse crew.  The crew determined there were significant issues with the removal because of previous adhesive application.

29.    "Amanda" was neither reasonable nor understanding.  If, for example, there was a delay on material delivery and installation would be past the period of performance,

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

she would make us give a discount for the delay otherwise she would not accept any performance past the date of the contract.

30.    "Amanda" at the Davis Monthan Air Force Base was the only time in G & S Carpet Mills' history that it ever had to offer a discount to the government for any delays past the period of performance.

31.    G & S Carpet Mills filed a claim with the Armed Services Board of Contract Appeals on January 27, 2021 relating to the contract with Davis Monthan Air Force Base.

### GSA Incidents

32.    GSA employees have treated Ali oddly.

33.    During a bidding site visit at the Reno, Nevada GSA, the point of contact kept saying the following to Ali:

      a.    "You are from California so you helped steal the election."

      b.    "People like you worked hard to steal the election."

      c.    "Trump is the rightful president and we the people are not going to sit back and let this happen."

34.    When the bid results were released, Ali called to find out what happened because G & S Carpet Mills was the low bid, but the contract went to a bid higher than that of G & S Carpet Mills.

35.    The GSA point of contact out of Las Vegas was very hostile, telling Ali: "Do you want to do something to not be able to work with the government anymore?  I know lots of people at Nellis Air Force Base which I could make life a lot of harder with one call, one phone call and you are done!"

36.    Ali had also seen the Las Vegas GSA point of contact on another job walk at the Lloyd D. George Federal Courthouse.  The point of contact also made many comments then about the election.  It was the same day that a pro-Trump rally was being held in front of the courthouse and the United States Marshals escorted Ali out.

///

///

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

### *FBI False Accusation and Interrogation*

37.     A couple generations ago, those perceived to be different were subject to different standards.  Members of minority groups had to watch every move, lest they be subject to threats, harder standards, or even blackmail.  Ali did not think this was still the case.  However, tragically, he soon learned otherwise.

38.     On May 13, 2021 at around 8:00 a.m., there was a knock on the door of Ali's home in Rancho Cucamonga, California.  At the door were two armed FBI Special Agents, Daniel Dean and Steven Sanchez (collectively, "Special Agents").

39.     When Ali opened the door, his son standing on the staircase could see the Special Agents and their firearms.

40.     When the Special Agents asked if they could come in to speak with Ali, Ali suggested that they should all go to the backyard because his kids were home, were already concerned about the Special Agents' presence, and were asking why they had firearms.

41.     When seated in the backyard, Ali noticed that one of the agents had a firearm attached to his ankle.

42.     Ali's kids came to the sliding glass door and asked who the Special Agents were.  Ali told them they were with the government and were asking Ali questions about a project.

43.     The Special Agents proceeded to grill Ali on all details of his life:  his family, his children, his marriage, his profession, his clients.

44.     They asked Ali which military bases he had visited.  He rattled off the list, off the top of his head.

45.     The Special Agents asked him further questions.

46.     After several hours, the Special Agents explained that someone had claimed they witnessed Ali stealing classified documents from a secure site (the "Alleged Incident").

47.     Knowing the security procedures that are always followed, Ali was impressed by the absurdity of the Alleged Incident, and let the Special Agents know.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

48.   The Special Agents asked if Ali knew why such a claim would be made against him.

49.   Ali responded that there had been some recent contract disputes and other spats.

50.   The Special Agents then stated that after following through with the investigation, and speaking to Ali, they had found nothing to support the Alleged Incident and determined that it was a false accusation.

51.   The Special Agents closed by reminding Ali of the security procedures to follow if he is ever approached by a foreign government.

52.   Special Agent Dean, however, commented that he would make sure that Ali never finds out who notified FBI about the Alleged Incident.

53.   There was no way to prevent others from finding out about the Alleged Incident and the interrogation.

54.   The Alleged Incident was fabricated with an intent to harm Ali and/or G&S Carpet Mills.

55.   Furthermore, on information and belief, the Special Agents knew the Alleged Incident to be bogus before showing up to Ali's house.

56.   The Special Agents knew or should have known that the false accusations against Ali were pretextual.

57.   The Special Agents knew or should have known that the false accusations against Ali were based on ethnic and religious bias and prejudice.

58.   Nevertheless, the Special Agents chose to put Ali through the embarrassing and lengthy process, causing great shame and anguish.

### *Injuries to Ali*

59.   As a direct and proximate result of the conduct of FBI and the Special Agents, Ali suffered substantial damages, including loss of liberty, invasion of privacy, substantial emotional distress and harm, loss of reputation, and physical harms caused by the

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

emotional distress, including difficulty sleeping, nightmares, and difficulty focusing on daily tasks.

60.     In causing the interrogation of Ali, FBI and the Special Agents were responsible for the unannounced, early morning entry into the home of Ali and his family.

61.     The Special Agents entered the house with firearms displayed and in the presence of Ali's children.

62.     These terrifying actions (as if the agents were dealing with an armed, dangerous terrorist) were followed by an interrogation with false accusations that Ali had violated federal law.

63.     Ali, who was innocent of all of the charges, believed that he was being prosecuted for no legal reason and because of ethnic and religious bias and prejudice directed at him and other Iranian-Americans and other Muslims who were engaged in honest work at federal facilities.

64.     Ali fears that a criminal prosecution would result in his wrongful conviction and the destruction of all that he had built and established in his personal and professional life.

65.     Ali is in fear of additional illegal surveillance and other actions by the government.

66.     These events prejudice and will continue to prejudice Ali with respect to future contracts with the federal government and also non-governmental contracts.

67.     Ali has suffered great embarrassment and shame with his wife, his children, his co-workers, and his business rivals.

68.     Ali suffers from nightmares and great and persisting anxiety.  He has required extensive psychological treatments.

### *FOIA Request*

69.     In December 2022, Ali's counsel submitted a FOIA request to FBI for the initial report about the Alleged Incident (who (reported the Alleged Incident), what, when,

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

where, why and how).   The request was assigned reference number 1559902-000 ("Request").

70.   On January 3, 2023, FBI suggested that the Request be limited:   "At approximately 169 potentially responsive pages, your request is currently in the medium track.   Your request would need to contain 50 or fewer potentially responsive pages to move it to the small track, which tends to be the fastest of the tracks.   Small track requests (0- 50 pages) current average time is approximately 3 months to complete."

71.   Ali's counsel confirmed on January 10, 2023 that the Request should be narrowed and asked for clarification of how to do that.

72.   On January 12, 2023, instead of explaining how to narrow the Request's scope, FBI stated the following completion estimates:

- Small track requests (0-50 pages) current average time is approximately 4 months to complete;
- Medium track requests (51-500 pages) current average time is approximately 35 months to complete;
- Large track requests (501-4,999 pages) current average time is approximately 55 months to complete; and
- Extra-large track requests (over 5,000 pages) current average time is approximately 77 months to complete.

73.   On January 17, 2023, Ali's counsel asked pointed questions about the Request:

- "Approximately how many responsive pages exist here?"
- "Are you saying that if there are 51 pages, it will take you 35 months to complete?"
- "But if there are 50 pages, it will take you 4 months?"
- "If we, or any other members of the public say, 'OK' to this 50-page proposal, how do you limit it?  Is it the first 50 pages?  How does one know they won't just get junk?"

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

74.     FBI responded by stating "As mentioned within our email dated January 11, 2023, if we narrowed the scope of this request by limiting to approximately 50 potentially responsive pages, then it would be approximately the first 50 pages.  We are limited on what we can discuss since the potentially responsive pages haven't been reviewed by a FOIA analyst."

75.     On January 26, 2023, Ali's counsel told FBI:  "Please send us the first 50 pages electronically, not cherry-picked, asap.  I have made several congressional offices aware of the intransigence here, which is highly suspect.  We expect strong communication from you moving forward; prompt updates ASAP, and the information we have requested in the spirit of the request."

76.     On January 27, 2023, FBI confirmed the narrowed scope of the Request.

77.     On May 8, 2023, Ali's counsel requested an update on the Request, but never received one.

78.     As of the date of this filing, FBI has not complied with FOIA, has not issued a determination letter, has not provided an estimated completion date, and has produced no records responsive to the Request.

## FIRST CLAIM FOR RELIEF

### FAILURE TO PRODUCE RECORDS

### [5 U.S.C. § 552(a)(4)(B)]

79.     Ali incorporates by reference the foregoing allegations.

80.     FBI is a federal agency subject to FOIA.

81.     The requested records are not exempt under FOIA.

82.     FBI has produced no responsive records.

83.     Ali is entitled to injunctive relief compelling the release and disclosure of the requested records.

///

///

///

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

### SECOND CLAIM FOR RELIEF

### FAILURE TO CONDUCT A REASONABLE SEARCH

### [5 U.S.C. § 552(a)(4)(B)]

84.     Ali incorporates by reference the foregoing allegations.

85.     FBI is a federal agency subject to FOIA.

86.     The requested records are not exempt under FOIA.

87.     FBI has not conducted a reasonable search for the requested records.

88.     Ali is entitled to injunctive relief compelling the release and disclosure of the requested records.

### THIRD CLAIM FOR RELIEF

### EQUAL PROTECTION AND DUE PROCESS VIOLATIONS

### [Fifth Amendment/*Bivens*]

89.     Ali incorporates by reference the foregoing allegations.

90.     Ali has a right to be free from being falsely stigmatized as an individuals associated with terrorist activity and from having these associational falsehoods disseminated widely to government agencies and foreign governments.

91.     The false accusations and interrogation of Ali has adversely affected his right to be free from false stigmatization by the government.

92.     The actions of FBI and the Special Agents, acting in their official capacity and under color of authority, violated Ali's clearly established equal protection and due process rights under the Fifth Amendment.

93.     The FBI and the Special Agents' false accusations and interrogation of Ali were based on impermissible ethnic and religious factors, and specifically on Ali's statuses as an Iranian-American and as a Muslim.

94.     The FBI and the Special Agents' unlawful actions have caused Ali emotional distress, deprivation of his constitutional rights, damage to his reputation, and material and economic loss.

///

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## **FOURTH CLAIM FOR RELIEF**

## **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

## **[Federal Tort Claims Act - 28 U.S.C. § 1346(b)]**

95.     Ali incorporates by reference the foregoing allegations.

96.     The FBI and the Special Agents owed Ali a duty not to accuse or interrogate him based on impermissible ethnic and religious factors, and specifically on Ali's statuses as an Iranian-American and as a Muslim.

97.     The FBI and the Special Agents negligently breached that duty.

98.     Ali suffered severe emotional distress as a result of the FBI and the Special Agents' negligence.

## **PRAYER**

**WHEREFORE**, Ali seeks judgment against the Defendants for:

1.      A declaration that FBI has violated FOIA;

2.      An order directing FBI to conduct a reasonable search for records and to promptly produce the requested records;

3.      An order enjoining FBI from withholding non-exempt public records under FOIA;

4.      Compensatory damages, according to proof;

5.      Punitive damages according to proof;

6.      Reasonable attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E), and other applicable authorities, plus costs of suit; and

7.      For such further relief as the Court may deem necessary and proper.

Respectfully submitted,

DATED:  May 11, 2023        **ACTIUM LLP**

By:   /s/ *Mike Gatto*
MIKE GATTO

/s/ *Jonathon D. Nicol*
JONATHON D. NICOL

Counsel for Plaintiff Ali Gorginfar

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff Ali Gorginfar demands trial by jury.

Respectfully submitted,

DATED:  May 11, 2023          **ACTIUM LLP**

By:   /s/ *Mike Gatto*
      MIKE GATTO

      /s/ *Jonathon D. Nicol*
      JONATHON D. NICOL

      Counsel for Plaintiff Ali Gorginfar

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF